Agnes R. NUTT, Appellee,

v.

**BLACK HILLS STAGE LINES, INC., a Corporation, Kenneth Clark and Robert Mechaley, Appellants.**

No. 20730.

United States Court of Appeals, Eighth Circuit.

Dec. 22, 1971.

---

Thomas E. Simmons, and Robert La-Fleur, Rapid City, S. D., for appellants.

Curtis D. Ireland, Rapid City, S. D., for appellee.

Before MATTHES, Chief Judge, VAN OOSTERHOUT, Circuit Judge, and EISELE, District Judge.*

EISELE, District Judge.

This diversity personal injury litigation is on appeal from the District of South Dakota. The jury awarded the plaintiff-appellee $25,000.00 for injuries sustained when a bus operated by Black Hills Stage Lines, on which appellee was riding as a passenger, collided with a horse which had escaped from a fenced field under the joint control of defendants Robert Mechaley and Kenneth Clark. Defendants-appellants moved for a new trial solely on the issue of damages. The motion was denied, 320 F. Supp. 72. It is from the judgment in favor of the plaintiff and the order denying the motion for a new trial that defendants appeal.

Appellants raise substantially the same points, here, that were raised in the motion for a new trial. Only two of these raise serious questions: First, the appellants contend that the trial judge abused his discretion in denying their motion for a continuance. Second, they contend that it was prejudicial error to allow appellee's medical witness, who examined appellee for the sole purpose of qualifying himself to testify as an expert at the trial, to recount the medical history and subjective complaints related to him by the appellee and to then base his opinion thereon.

The accident in question occurred in August, 1966. On that day, the appellee, Mrs. Nutt, a resident of Scotland, was traveling to Rapid City, South Dakota, to visit her daughter. Just outside of Rapid City, the bus, on which she was traveling, collided with the horse and Mrs. Nutt received injuries for which she was temporarily hospitalized. She stayed with her daughter for a short time after being discharged from the hospital and then returned to Scotland.

The complaint was filed on March 19, 1969. In April of that year interrogatories were served upon appellee. In her answers, appellee related, among other things, the names and addresses of the doctors who treated her as well as the nature of her injuries, including the symptoms which she then claimed to have.

The case was set for trial on Thursday, October 1, 1970.

On September 28, 1970, appellee returned to Rapid City for the trial, and, upon arrival, was examined by Dr. Harold Fromm, her initial treating physician. The next day, Tuesday, she saw an ear, nose and throat specialist and was also referred for X-ray examination of her spine. On the same day, appellants took Mrs. Nutt's deposition, as well as Dr. Fromm's. In addition, they received the reports of all of the doctors who had treated or examined her up to that time. On Wednesday, September

* United States District Judge, Eastern District of Arkansas, sitting by designation.

30, appellee was examined by Dr. Natarajan, a neuropsychiatrist, admittedly for the sole purpose of qualifying the doctor to testify on her behalf. The trial began the following morning.

It was during the voir dire of the jury panel that appellants first learned: (1) that Dr. Natarajan might be called as one of appellee's witnesses; and (2) that appellee seriously claimed to suffer from traumatic neurosis. At the close of the opening statements, appellants moved to either strike appellee's claim of traumatic neurosis or grant a continuance because of appellee's failure to notify them of the name of the witness and because of surprise and lack of an opportunity to engage in the necessary discovery proceedings. The motion was denied with the understanding that Dr. Natarajan would not testify until the following day and, further, that Mrs. Nutt would be made available that evening for a psychiatric examination by a doctor for the defendants. The defendants attempted, but were unable, to locate a psychiatrist to make such an examination.[1]

The next morning, on the second day of trial, appellee furnished a copy of Dr. Natarajan's report to counsel for the appellants. Appellants renewed their motion. It was again denied and Dr. Natarajan was permitted to testify.

Dr. Natarajan, during direct examination, was permitted, over appellants' objection, to recount the history related to him by Mrs. Nutt during his examination. He thereafter stated his opinion as to the causation and permanency of the alleged injuries based primarily upon said history. He was subjected to a vigorous and thorough cross-examination by the appellants.

With respect to appellants' first point, appellants contend that the court abused its discretion in denying their motion for a continuance, or, alternatively, in permitting the plaintiff to use Dr. Natarajan and to make proof with respect to the "new" claim of traumatic neurosis. They specifically argue that appellee had a continuing duty to seasonably notify them of the possibility that Dr. Natarajan might testify and that there would be a claim for traumatic neurosis, a claim which was not supported by the reports or statements of the other doctors who treated her.[2] They argue that the disclosure at the commencement of trial did not satisfy this duty and that the denial of the motion for a continuance prejudiced the appellants by denying them their right to investigate Dr. Natarajan's qualifications and to obtain their own medical evaluation of the new claim and, possibly, adverse expert testimony to rebut it.

Appellee contends that there was no abuse of discretion. She argues that since Dr. Natarajan did not examine her until the day prior to the commencement of the trial and since the possibility of his testifying was disclosed the next

---

1. Appellants attempted to obtain the services of Dr. Harold Henrie, a psychiatrist in Rapid City; however, he was unavailable. They contend that he was the only other psychiatrist within a 400 mile radius of Rapid City. The attorneys for appellee argued, in their brief, that other psychiatrists were available.

2. Appellee contends that a notation on the hospital record which stated, "also apparently cerebral concussion. Fromm", was sufficient to notify appellants of a possible claim for traumatic neurosis. It is also noted that in her answer to the interrogatories, Mrs. Nutt indicated that she complained of "A nervous twitch in my head and a general nervous condition . . . ". In addition, other medical reports indicated a "nervous condition". The status of the discovery immediately prior to the trial, however, clearly indicates that the plaintiff was not then intending seriously to pursue any such claim even though the suggestion thereof did so appear. It is one of the purposes of serious discovery work to separate the wheat from the chaff—to identify the serious claims and separate them from the frivolous and the superficial and then to "bore in" on the former. Good lawyers will note the many possible claims. By the time of trial, however, diligent discovery will have revealed which of these will be seriously pursued at the trial.

morning, there was no prejudice to the defendants. In addition, appellee contends that the trial judge properly protected appellants' rights by giving him an opportunity to obtain an adverse medical examination. Appellee also emphasizes the fact that appellants conducted a vigorous and thorough cross-examination which indicated that they were adequately prepared.

The record does not reveal any willful unfairness on the part of the plaintiff.

This court recently stated that a trial court should have broad latitude and "discretion in carrying out discovery requirements" and that "inaccuracies or errors at this stage of the proceeding should not form the basis for setting aside verdicts, unless prejudicial error is shown". Greyhound Lines, Inc. v. Miller, 402 F.2d 134 (8th Cir. 1968). Appellee contends, in her brief, that there was no prejudice and that " . . . the court placed the burden where it belonged—on appellants' counsel. It was up to them to make the necessary arrangements for an adverse medical examination, . . . ". Under the facts and circumstances of this case we cannot agree.

■ The federal discovery rules were designed to provide each party with the fullest pre-trial knowledge of the facts and to clarify and narrow the issues to be tried. In this case, Dr. Natarajan's testimony added a significant new dimension to appellee's case. This is evidenced by the fact that he was the only medical witness called on behalf of appellee and, further, by the fact that appellee's own treating physician was called as a witness by the appellants in an attempt to minimize her injuries. From a review of the record, and the then existing fruits of their discovery efforts, appellants could not have anticipated, prior to trial, that they would have to deal with testimony supporting any serious claim for traumatic neurosis. Upon receiving notice of this claim, appellants should have been given an adequate opportunity to prepare to deal

with this issue by means of further discovery and, if necessary, by obtaining an independent medical evaluation thereof and, possibly, opposing expert testimony. Upon the basis of the situation revealed by this record, the burden should not have been placed upon them to do that within such a limited period during the progress of the actual trial.

■ One of the primary objectives of the Federal Rules of Civil Procedure is to eliminate the element of "surprise" from the trial of civil cases. A fair reading of those rules requires that newly discovered evidence be disclosed far enough in advance of trial to allow the opposing party sufficient time to prepare its defense, if any. The court should have required the plaintiff to forego this new issue, and the testimony supporting it, or, if plaintiff refused, then it should have granted the defendants a reasonable continuance. See Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N.W.2d 110 (1963); Greyhound Lines, Inc. v. Miller, supra. And this should be the rule even where the problem arose, as here, through the fault of none of the parties.

■ With respect to the second point for reversal, appellants contend that it was error ot permit Dr. Natarajan to recount the history related to him by appellee and base his opinion thereon. The general rule, as stated by this court in United States v. Nickle, 60 F.2d 372 (1932), and in Chicago & N. W. Ry. Co. v. Garwood, 167 F.2d 848 (1948), is that the declaration of a patient to his doctor with respect to his condition and symptoms are admissible, as an exception to the hearsay rule, unless it appears that the patient was examined by the doctor for the sole purpose of qualifying him as an expert witness. Here, it is undisputed that Dr. Natarajan examined the witness for the sole purpose of qualifying himself as an expert witness rather than as a treating physician.

Appellee argues that it was not error to permit Dr. Natarajan to so testify and contends that an exception to the general rule has developed in other fed-

eral courts in those cases where the record contains evidence which is substantially the same as that related by the doctor and when the patient's complaints are primarily subjective and deal with mental and psychiatric problems. Teti v. Firestone Tire & Rubber Co., 392 F.2d 294 (6th Cir. 1968); Kaufman v. Kaufman, 82 U.S.App.D.C. 397, 164 F.2d 519 (1947). She further argues that this case should be distinguished factually from *Nickle* and *Garwood* since, in those cases, no mental or psychiatric claims existed.

This issue is one of considerable importance upon which there is a division of authorities among the Circuits. Inasmuch as it is not dispositive of the appeal, we go no further at this time than to state that, upon the basis of the record, the court below did not commit prejudicial error in admitting the testimony of Dr. Natarajan. Additionally, insofar as the lower court's resolution of this issue depended upon an interpretation of state law, it is clear that it reached a permissible conclusion.

Because of the error in denying appellants' motion for a continuance, the judgment is reversed and the case remanded for a new trial limited solely to the issue of damages.

MATTHES, Chief Judge (dissenting).

I concur with the majority's disposition of the second issue. I cannot, however, agree with the majority's holding that it was prejudicial error to deny the continuance and therefore I respectfully dissent.

It is axiomatic that "a federal trial judge has broad discretion in granting or denying a request for short continuances during the course of a trial." Winston v. Prudential Lines, Inc., 415 F.2d 619, 620 (2d Cir. 1969), and it is equally well-settled that "the trial court should have discretion in carrying out discovery requirements and that inaccuracies or errors at this stage of the proceeding should not form the basis for setting aside verdicts, unless prejudicial error is shown." Greyhound Lines, Inc. v. Miller, 402 F.2d 134, 143 (8th Cir. 1963). It is not for this court to second guess the trial judge who observed the circumstances first hand when the prejudicial consequences of the failure of discovery are as doubtful as they are in this case.

Were the circumstances here as clearly a deprivation of discovery as in the cases cited by the majority, I might concur in reversal. But this is not a case like *Greyhound,* where a pre-trial order to produce records of plaintiff's post-accident hospitalizations was made while plaintiff was in a certain hospital and plaintiff nevertheless withheld that information for four months until the trial began because the information was highly damaging. Nor is it like *Gebhard,* where plaintiff withheld the names of eyewitnesses for 7 days until the last day of the trial because their testimony gave a totally different view of how the accident occurred. I do not believe it is entirely accurate to say that "Dr. Natarajan's testimony added a significant new dimension to appellee's case." Plaintiff's answers to defendants' interrogatories and reports of her Scottish physicians were available to defendants' attorneys long before the trial. Although these documents did not assert a claim of traumatic neuroses in those precise words, they plainly described her condition in terms which defendants' experienced and competent attorneys should have recognized as symptomatic of that affliction.[1]

Nor can it be said here as in *Greyhound* and *Gebhard* that "the failure to disclose was willful. . . ." 122 N.W.

---

1. Dr. Patterson's report said "her general nervous condition has deteriorated and this, in my opinion, is the result of the accident." Dr. MacKechnie's report said that he had been treating her subsequent to the accident "for a nervous condition," that she "requires day sedation, and due to her disturbed sleep, she requires treatment for this also," and that "[t]here is no doubt she will be affected by her injuries and nervousness for some time to come. . . ."

2d at 115. Plaintiff apparently returned to Scotland after the 1966 accident and her South Dakota attorney evidently had little personal contact with her until she returned to Rapid City on September 28, 1970, three days before the trial. That afternoon she visited the originally treating physician, Dr. Fromm, and, upon Fromm's advice, she visited a specialist, Dr. Allen, on the 29th. Also on the 29th, her deposition was taken by defendants, and it was not until the next day that she saw Dr. Natarajan for the first time. At the outset of the trial on the following day, October 1, defendants were apprised of the examination, that Natarajan might become a witness after plaintiff's attorney had consulted with him again, and that plaintiff claimed to suffer a traumatic neurosis. Insofar as the relative knowledge of the parties, then, it appears that while defendants did not know of Natarajan's diagnosis until the day before he testified, plaintiff became aware of it only a day sooner than defendants.

In addition to the foregoing, it is apparent that the trial judge adequately protected defendants' interests by ordering a day's delay before Dr. Natarajan would be allowed to testify to enable defendants to have plaintiff examined by a physician of their choice pursuant to Rule 35 and to take Natarajan's deposition pursuant to Rules 26(b) (4) and 30. While we are bound by the record to the conclusion that defendants were unable to procure the services of the only other psychiatrist in the area, it is clear that defendants' failure to depose Natarajan and their reliance on the treating physician, Fromm, as an adverse expert was a decision of trial tactics. Defendants' capable counsel were clearly conversant on the subject of psychiatric diagnoses and presented a thoroughly prepared cross-examination of Natarajan which focused on the unreliability of psychiatric diagnoses based solely on subjective symptoms revealed in a single interview. De-

fendants relied heavily in closing arguments upon contrasting this characterization of Natarajan's diagnosis with that of the originally treating physician, Dr. Fromm. Indeed, defendants could hardly ask for better expert testimony than Fromm's clear inference that plaintiff suffered only from compensationitis.

I am constrained to believe that defendants chose the trial strategy they preferred, hoping of course to discredit Dr. Natarajan's diagnosis with the testimony of Dr. Fromm. In any event, the record viewed in its entirety does not convince me that the trial judge acted arbitrarily and abused his discretion. I would affirm.