**The REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, Appellant,**

v.

**U.S. GYPSUM CO., Appellee.**

No. 88–2834.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1989.

Decided Aug. 16, 1989.

Rehearing Denied Sept. 26, 1989.

Kenneth McClain, Independence, Mo., for appellant.

James Pagliaro, Philadelphia, Pa., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and DUMBAULD,[*] Senior District Judge.

McMILLIAN, Circuit Judge.

The Reorganized Church of Jesus Christ of Latter Day Saints (RLDS) appeals from a final judgment entered in the District Court[1] for the Western District of Missouri upon a jury verdict in favor of United States Gypsum Co. (U.S. Gypsum) on RLDS' product liability claim against U.S. Gypsum. For reversal, RLDS argues that the district court erred in (1) submitting the verdict on an improper form, (2) refusing to send an exhibit to the jury for examination, and (3) refusing to allow product identification testimony by one of RLDS' expert witnesses. For the reasons discussed below, we affirm the judgment of the district court.

RLDS sued U.S. Gypsum alleging that Audicote, an acoustical plaster manufactured by U.S. Gypsum, had been installed in the auditorium of its world headquarters building in Independence, Missouri. RLDS alleged that Audicote had contaminated the auditorium with asbestos fibers. The complaint contained allegations of strict liability for defective product and inadequate warning as well as breach of implied warranty of merchantability. RLDS sought $5,000,000 in actual damages and $5,000,000 in punitive damages.

One of the major issues at trial was whether the asbestos-containing product used in the RLDS auditorium was, in fact, Audicote. U.S. Gypsum maintained that it was not and that RLDS had sued the wrong defendant. Both sides presented expert testimony on the issue of product identification.

During the discovery phase of the proceedings, RLDS had indicated that it would call Arthur Rohl, Ph.D., as an expert on product identification. In its second supplemental responses to U.S. Gypsum's first set of interrogatories, RLDS also indicated that it might call Richard Hatfield as an expert witness on either product identification or dust sampling. In later communication between the parties, U.S. Gypsum ascertained that Hatfield had not done any bulk sample analysis (necessary for product identification). U.S. Gypsum explicitly requested the opportunity to depose Hatfield if he were to be used as a witness. RLDS assured U.S. Gypsum that Hatfield would be made available for deposition "in sufficient time so that [U.S. Gypsum would not be] prejudiced at trial." Joint appendix at 155. Two months before trial, RLDS notified U.S. Gypsum that it intended to

---

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

call Hatfield as a witness to testify "about settled dust in the RLDS Auditorium." Joint appendix at 161. RLDS provided U.S. Gypsum with Hatfield's data on dust sample analysis. U.S. Gypsum deposed Hatfield two weeks before trial and once again ascertained that Hatfield's expertise had been sought solely on dust sampling. Deposition of Richard Hatfield at 21 (Aug. 10, 1988).

During the trial, U.S. Gypsum impeached Dr. Rohl's credibility by calling into question representations he had made concerning his academic credentials. RLDS then sought to have Hatfield testify concerning bulk sampling, based on Dr. Rohl's data. U.S. Gypsum objected on the basis of unfair prejudice and surprise and requested, at the least, the opportunity to depose Hatfield on product identification. RLDS informed the court that Hatfield had to catch a plane, and his testimony would therefore have to take place immediately. The district court sustained the objection.

Prior to closing arguments, the district court distributed a proposed verdict form to counsel. The first question on the form asked whether Audicote had been installed in the RLDS auditorium. The form instructed the jurors that if they answered "no" to that question, they may stop at that point. The following questions asked whether the jury found in favor of plaintiff or defendant on each of the claims submitted.

When RLDS objected on the ground that the verdict form overemphasized the issue of product identification, the district court said that Federal Rule of Civil Procedure 49 provided for such flexibility. The district court informed counsel that product identification was logically the first issue that the jury should consider. The district court did not identify which subdivision of Rule 49 under which it was proceeding; however, the district court did refer to the verdict form as a special verdict form which would bring it within the ambit of Rule 49(a). Tr. at 1592.

RLDS objected to the verdict form on the sole ground that it overemphasized the issue of product identification. Tr. at 1623–

26. After closing arguments, the district court invited RLDS to make further objections to the form of the verdict. RLDS declined to do so. Tr. at 1713.

The verdict form proposed by the district court was submitted to the jury. The jury checked the "no" box on the issue of product identification, resulting in a verdict for U.S. Gypsum. The district court denied RLDS' motion for a new trial. This appeal followed.

*Verdict form*

RLDS argues that the district court erred in failing to inform the parties under which subdivision of Rule 49 it was submitting the case. *See Sakamoto v. N.A.B. Trucking Co.*, 717 F.2d 1000, 1007 (6th Cir.1983) (*Sakamoto*) (Federal Rule of Civil Procedure 51, when read in conjunction with Rule 49(a), requires court to inform parties of its intent to submit special interrogatories and to disclose substance of interrogatories).

RLDS argues further that the verdict form did not comply with either subdivision of Rule 49. According to RLDS, the form did not comply with Rule 49(a) because that subdivision of the rule requires a submission of all significant issues in a case, not just one. RLDS argues further that although it is incumbent upon counsel to request additional findings in a Rule 49(a) submission, it was denied the opportunity to do so because of the misleading appearance of the verdict form. RLDS argues that the verdict form did not comply with Rule 49(b) because the jury was not instructed both to answer the interrogatory and reach a verdict. RLDS claims that it was also misled by the district court's characterization of the question on product identification as an "interrogatory" as opposed to a "question." Rule 49(b) uses "interrogatory" while Rule 49(a) uses "question." The result, according to RLDS, was that it believed that the district court was submitting the case under Rule 49(b). Because the parties are not required to request interrogatories under Rule 49(b) and RLDS did not, according to its brief, wish to confuse the jury with more inter-

rogatories, it made no further objection to the form of the verdict.

RLDS also argues that the verdict form improperly overemphasized the issue of product identification. *Cf. Flentie v. American Community Stores Corp.*, 389 F.2d 80, 83 (8th Cir.1968) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error," but in the instant case, instructions were proper).

■ By not objecting to either the district court's failure to identify the verdict form as a Rule 49(a) or (b) submission or to the failure of the verdict form to include all issues, RLDS has waived such objections on appeal. RLDS now argues that the verdict form was, on its face, an improper submission under either subdivision of the Rule. RLDS has admitted by its argument that it was on notice that the submission was problematic. It should, therefore, have inquired what type of verdict form was being submitted to the jury. RLDS has likewise waived objection to the verdict form on the grounds of its alleged overemphasis of the product identification issue by conceding that "the [district] court is allowed to submit such instructions," Tr. at 1625, and then failing to renew its objection when given the opportunity to do so.

■ Moreover, even if the issue had been properly preserved for appellate review, we believe that the district court properly exercised its discretion in constructing the verdict form in the way that it did. Product identification was the threshold issue in the case, and there was no need for further deliberation once the jury found that Audicote had not been installed in the RLDS auditorium. Rule 49(a) does not require a submission of a question on each issue. An examination of the record in this case reveals that the district court fairly submitted all of the issues to the jury through the combination of the special interrogatory and jury instructions. *See Columbia Plaza Corp. v. Security Nat'l Bank*, 676 F.2d 780, 789 (D.C.Cir. 1982) ("[I]t is not error to refuse to submit a question [as a special interrogatory] where the issue is adequately covered by other questions or instructions.") (citation omitted).

■ Finally, the district court's description of the verdict form as a "special verdict form" clearly indicated that the submission was made under Rule 49(a) regardless of the district court's use of the term "interrogatory" instead of "question." Those terms are commonly used interchangeably by participants in federal court proceedings. *See, e.g., Sakamoto*, 717 F.2d at 1007. The district court did, therefore, inform the parties that it was submitting a special verdict and disclosed the substance of the question, or more precisely, special interrogatory, to the jury. *See id.* If there was any confusion about what type of submission was being made, it was incumbent upon RLDS to ask for clarification from the district court.

*Exhibit No. 670*

■ During deliberations, the jury sent a note to the district court asking, in part, whether "Keller Hospital [had] validity of Audicote: Sales slip; charge orders?" In response to the note, the district court informed the jury that there were no sales slips or charge orders in evidence. RLDS objected, arguing that the response to the question was too narrow and that what the jury wanted was any confirming evidence that Audicote had been installed in Keller Hospital. RLDS argued that Exhibit No. 670 should be sent to the jury, but the district court refused to do so.

Exhibit No. 670 is a U.S. Gypsum intra-office memorandum discussing the installation of Audicote at Keller Hospital in Fayette, Missouri. The significance of the exhibit is that RLDS' expert witness, Dr. Arthur Rohl, compared samples of the plaster used in the RLDS auditorium with samples of the plaster used at Keller Hospital and concluded that the products were the same. When Exhibit No. 670 was admitted into evidence, the district court ruled that the text should not be sent to the jury because it contained irrelevant and prejudicial statements about application problems with the product used in Keller Hospital.

RLDS argues that the district court's response to the jury's note was an improper comment on the evidence because it left the jury with the impression that RLDS had no proof that the Keller Hospital sample could be validated as Audicote. RLDS also argues that U.S. Gypsum misled the district court into thinking that the jury had already seen the exhibit.

U.S. Gypsum argues that the district court correctly responded to the jury's request because it unambiguously asked for sales slips or charge orders, that is, internal Keller Hospital documents confirming that Audicote had been installed in Keller Hospital. U.S. Gypsum points out that the jury was well aware of the existence of Exhibit No. 670 because it was identified by Dr. Rohl during his direct examination and read to the jury during the presentation of RLDS' case.

U.S. Gypsum argues further that the erroneous statement that the jury had already seen the exhibit came after the district court had decided not to send it to the jury in response to their note. Further, U.S. Gypsum argues that RLDS made no attempt to correct the erroneous statement and has therefore waived any objection.

We hold that the district court properly exercised its discretion in refusing to send Exhibit No. 670 to the jury. The jury was aware of its existence, as well as its specific content, and did not ask to view it. The jury specifically asked for Keller Hospital documents confirming the installation of Audicote in Keller Hospital. The jury could have asked to view Exhibit No. 670. Had the jury done so, the district court could have then informed the jury that even though the exhibit existed, they could not view the document itself because it contained extraneous material.

*Product identification testimony*

■ RLDS argues that the district court erred in refusing to allow Hatfield to testify on bulk sampling. RLDS argues that it had disclosed in its second supplemental responses to U.S. Gypsum's interrogatories that Hatfield was to be called as an expert witness on bulk sampling. RLDS argues that U.S. Gypsum was therefore not prejudiced when it sought to introduce Hatfield's testimony on bulk sampling. We disagree.

The record discloses that upon learning from RLDS' interrogatories that Hatfield *may* be called as an expert on product identification, U.S. Gypsum periodically attempted to ascertain whether Hatfield would, in fact, be called as such a witness so that he could be deposed. The response was always negative, at least by implication. RLDS responded to interrogatories and requests for production of documents as if Hatfield would be used solely as an expert on dust sampling. Further, Hatfield himself indicated during deposition that his expertise had been sought on dust sample analysis alone.

The district court properly exercised its discretion in refusing to allow Hatfield's testimony on the issue of product identification. RLDS clearly held Hatfield out as solely a dust sample expert. Because U.S. Gypsum would have had no opportunity to depose Hatfield on the subject of product identification, RLDS' last-minute decision to use him as a product identification expert would have unfairly prejudiced U.S. Gypsum. *See Nutt v. Black Hills Stage Lines, Inc.*, 452 F.2d 480, 482–83 (8th Cir. 1971) (where neuropsychiatrist examined plaintiff the day before trial and plaintiff used his testimony to establish new issue of traumatic neurosis, it was error to admit testimony without granting defendants a reasonable continuance in order to prepare defense on the new issue); *Sturm v. Clark Equip. Co.*, 547 F.Supp. 144, 146 (W.D.Mo. 1982) (court excluded expert testimony where nature of testimony not disclosed during discovery), *aff'd*, 732 F.2d 161 (8th Cir.1984).

The record in this case reveals no error by the district court in the conduct of the trial or in its submission of the case to the jury.

Accordingly, the judgment of the district court is affirmed.