

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-2007

# Travelodge Hotels v. Honeysuckle Entr

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5254

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Travelodge Hotels v. Honeysuckle Entr" (2007). *2007 Decisions.* Paper 599.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/599

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5254

TRAVELODGE HOTELS, INC.
a Delaware Corporation

v.

HONEYSUCKLE ENTERPRISES INC.
a Missouri Corporation;
RYAN RICHARDSON, an individual,

Appellants

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 02-cv-2889
(Honorable Dickinson R. Debevoise)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2007

Before: SCIRICA, *Chief Judge*, FUENTES and ALARCÓN[*], *Circuit Judges*.

(Filed   August 10, 2007 )

OPINION OF THE COURT

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

SCIRICA, *Chief Judge*.

This case involves a dispute over a license agreement under which an independent hotel in Branson, Missouri, briefly operated as part of a nationwide chain of lodging facilities. On appeal, the hotel operator, Honeysuckle Enterprises, Inc., and Honeysuckle's owner, Ryan Richardson,[1] ask us to reverse the judgment of the United States District Court that it owed monthly contractual payments, liquidated damages—both with interest and attorney's fees—to Travelodge Hotels, Inc., the licensor. Honeysuckle and Richardson also ask that we enter judgment for them on their claim of fraudulent inducement of contract, breach of contract and breach of the covenant of good faith and fair dealing. We will affirm.

I.

Travelodge Hotels, a Delaware corporation, operates a guest lodging franchise system comprising trade names, service marks, standards of service and a centralized support system that includes a nationwide computer reservation system. Honeysuckle is a Missouri corporation owned by Richardson. Richardson built an eighty-room hotel in Branson, Missouri in 1988, and, over time, expanded the number of guest rooms and added a convention center. In 2000, Richardson received an unannounced visit from a

---

[1] Richardson, who was the guarantor on Honeysuckle's agreement with Travelodge, is listed as a codefendant. Though they are distinct parties, their arguments and claims are identical. For clarity, references to Honeysuckle as a party, unless otherwise indicated, are intended to include both Honeysuckle and Richardson.

Travelodge salesman, but Richardson indicated he was not interested in a franchise. Some months later, the salesman arranged another meeting with Richardson at which he told Richardson Travelodge wanted to expand its franchises in the Branson market, and indicated that as a Travelodge franchise, Richardson could expect a fifteen percent increase in business. They also discussed Travelodge's franchise fee of eight and a half percent of all sales, regardless of whether they were produced by Travelodge's system. Richardson requested assurance that a Travelodge franchise would result in a fifteen percent increase in revenues, roughly $300,000, couching this as a deal-breaking point.

At a subsequent meeting, Richardson met with the salesman and a sales supervisor for Travelodge, and was shown a document purportedly showing that in 1999, Travelodge was unable to fulfill more than 13,000 reservation requests at its Branson locations, Richardson testified the three computed that 5,400 completed reservations at Honeysuckle would have been enough to increase profits by fifteen percent. Richardson said he was convinced to enter a franchise deal with Travelodge after reviewing the document, called a "Monthly Lost Business Summary Report," with the two salesmen.

On at least one occasion Richardson received a Travelodge Uniform Franchise Offering Circular. The uniform offering warned prospective licensees to read it and all agreements carefully, and added this caution: "WE DO NOT FURNISH OR AUTHORIZE OUR SALESPERSONS TO FURNISH ANY ORAL OR WRITTEN INFORMATION CONCERNING ACTUAL, PROJECTED OR POTENTIAL COSTS,

3

EXPENSES OR PROFITS OF A PROPOSED FACILITY."  Richardson testified that he discarded the uniform offering without reading it.

Negotiations began, and a license agreement was signed in January 2001. Richardson successfully negotiated three changes from the original agreement offered by Travelodge.  These were: (1) an "Additional Termination Right" that gave Honeysuckle the right to terminate the license agreement after two years, rather than after fifteen years; (2) liquidated damages were reduced to $50,000 from the original $420,000; and (3) a monthly recurring fee was changed from eight and a half percent of gross room revenues to a flat fee of $8,125 in the first year.

The agreement did not contain any provision requiring that reservations received through Travelodge result in a fifteen percent profit increase.  In fact, the agreement explicitly disavows any express or implied covenants or warranties, and releases Travelodge from "any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement. . . . [The agreement] is the entire agreement superseding all previous oral and written representations, agreements and understandings of the parties."  Further the agreement contains this provision: "You acknowledge that no salesperson has made any promise or provided any information to you about projected sales, revenues, income, profits or expenses from the Facility except as stated [in the uniform offering] or in a writing that is attached to this Agreement."

4

Honeysuckle was to begin operating as a Travelodge on April 1, 2001, and franchise fees were to begin that day. But Honeysuckle never paid the monthly fees. At a bench trial, Richardson testified Honeysuckle received just thirteen reservations from Travelodge, and that these did not come in through the centralized reservations system. He also testified that he called the Travelodge reservations 800 telephone number and was told that Honeysuckle was not on the list of Travelodge facilities. Honeysuckle's manager gave inconsistent testimony about the number of times she called the reservations number.

Travelodge representatives apparently had no record of complaints from Honeysuckle. In July, Honeysuckle was notified that Travelodge might cut it off from the central reservations system. Ultimately, after no resolution could be reached, Travelodge cut Honeysuckle from the reservations service in August 2001. Honeysuckle then notified Travelodge that it intended to terminate the franchise, and Travelodge issued an acknowledgment of termination effective December 18, 2001, and demanded payment of outstanding fees and liquidated damages.

Travelodge sued Honeysuckle and Richardson for the unpaid amounts in the United States District Court for the District of New Jersey. Honeysuckle counterclaimed that Travelodge fraudulently induced it to enter into a contract by presenting it with the monthly lost business report and suggesting that, if it had been a Travelodge franchisee, Honeysuckle could have seen a fifteen percent increase in that period.

The case was tried without a jury. The court found Honeysuckle was liable under the contract, and that Honeysuckle had failed to prove its fraudulent misrepresentation claim. This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1332. The license agreement, under its own terms is governed by the laws of New Jersey. We exercise plenary review over a district court's interpretations of law and of the application of the law to the facts. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173 (3d Cir. 2005). We review the District Court's factual findings for clear error. *Banjo Buddies*, 399 F.3d at 173. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Pelullo*, 964 F.2d 193, 199 (3d Cir. 1992).

## III.

Honeysuckle's appeal comprises three general contentions: that the District Court erred by failing to find Travelodge fraudulently induced it to enter into a contract; the court erred because it did not find Travelodge had breached the license agreement; and, the court erred because it found Honeysuckle had breached the lease. Separately, Honeysuckle challenges evidentiary decisions by the District Court.

A. Fraudulent Inducement

Both as a defense and as a counterclaim, Honeysuckle argued at trial that it was fraudulently induced to enter into a contract with Travelodge. It contends the District

6

Court improperly overruled a statement about the relevance of certain evidence contained in an earlier summary judgment ruling by a prior judge; it misunderstood or misconstrued Honeysuckle's claim by focusing on a promise of future profits rather than statements about past facts; and it went against the weight of the evidence.

To prove a claim for fraudulent inducement, Honeysuckle was required to show Travelodge made a "material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by [Honeysuckle] to [its] detriment." *Jewish Center of Sussex County v. Whale*, 432 A.2d 521, 524 (N.J. 1981). Representations in a written agreement do not create an absolute defense or bar the introduction of parol evidence when the claim is fraud in the inducement. *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 611 (N.J. Super. App. Div. 1960). But the fraud exception for parol evidence is limited where an alleged oral understanding is expressly contradicted in a written agreement. *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1236 (N.J. Super. App. Div. 1991).

Honeysuckle contends it relied on the Monthly Lost Business Report it was shown by Travelodge representatives. The District Court found the evidence established Richardson told Travelodge he was not interested in a franchise agreement unless it would result in a fifteen percent increase in sales. The court found it was likely that in showing him the Monthly Lost Business report, Travelodge representatives tried to persuade him that his business would increase by that amount. The District Court also

7

noted that the Monthly Lost Business Report apparently reported inaccurately the number of room requests Travelodge was unable to accommodate. But the evidence also showed that Honeysuckle signed an agreement that did not contain a guaranteed fifteen percent increase in sales, and, rather, that expressly contradicted any such representation or guarantee. As noted, one of the express provisions released Travelodge from any oral or written claims by its representatives not included in the agreement, and it included a provision that no salesperson had made any such promise or projection.

A person who signs an agreement is presumed to have read it. Here, the District Court heard evidence about three significant changes to the original proposed agreement which Richardson negotiated. As the District Court noted, had Richardson believed Travelodge had guaranteed a fifteen percent increase in sales, he would have insisted it be referenced in the agreement and he would not have signed an agreement that explicitly negated any such guarantee.

Honeysuckle contends the District Court erroneously focused on future statements, when, Honeysuckle argues, its actual contention was that the Monthly Lost Business Report constituted a false statement of a past fact because actual lost business was lower than the number indicated on the report. The District Court concluded that even if this were so, Honeysuckle could not be deemed to have relied on that representation because the agreement it signed contained multiple acknowledgments that no Travelodge representative had made representations about sales or profits. Furthermore, Richardson

negotiated several changes to the agreement facilitating its termination by Honeysuckle, but none of these changes included a statement about representations made about past sales or profits.

Honeysuckle failed to establish its fraud defense or claim. It did not establish any fraudulent representations by Travelodge representatives, nor did it show it relied on any future guarantees or statements of past facts made by Travelodge or its representatives. We see no clear error in the District Court's findings of fact as to the fraud defense or counterclaim. We agree with the District Court's interpretations of the relevant law and with its application of the law to the facts of this case.[2]

B. Breach of the Agreement

Honeysuckle contends the District Court committed clear error in failing to find Travelodge breached the agreement by failing to add Honeysuckle to the centralized reservations system.

The evidence Honeysuckle offered to support this contention at trial included testimony by Richardson and Honeysuckle's manager that they had placed test calls to the Travelodge reservations number, and that they were not referred to Honeysuckle. The District Court determined that the manager's testimony was not credible because of a

_____

[2] Honeysuckle contends the trial judge misapplied New Jersey law as laid out in a summary judgment opinion by another judge from whose court the case was transferred. This claim, however, is meritless, as it confuses the applicable burdens at summary judgment and at trial, and it ignores the requirement that all elements of a claim be proven for the claim to succeed.

9

discrepancy between her deposition testimony, where she said she had placed one test call, and her trial testimony, where she said she made five test calls. Honeysuckle did not present any other evidence to support its contention, either as a defense or as a counterclaim.

Contemporaneous memoranda from Travelodge's franchise service manager do not indicate any dissatisfaction or complaints by Honeysuckle about the reservations phone line.[3] The District Court also noted, contrary to Honeysuckle's claims here, that it received just fourteen reservations from Travelodge, a defense exhibit showed a total of 133 residential room reservations were provided by Travelodge during the six months Honeysuckle was on the central reservations system. The District Court was also persuaded that Honeysuckle understood it was on the reservations system because its manager asked for a delay to consult with Richardson when Travelodge threatened removal from the system for nonpayment of fees. Honeysuckle has failed to show any error, much less a clear error.

Separately, Honeysuckle contends the District Court committed clear error because it found Honeysuckle had breached the contract. This argument depends on

---

[3] Honeysuckle contends Boyd failed to register Honeysuckle's complaints, particularly several complaints Richardson testified he made by phone or letter, because her job included a quota of contacts with franchisees, and that resolution of complaints did not count toward this quota. Honeysuckle suggests, therefore, that Boyd did not include the complaints so as to register the contacts in satisfaction of her job requirements. This is a fact question that could have been raised at trial, not on appeal, and if it had been, it would have required supporting evidence beyond the bald assertion presented here.

Honeysuckle's earlier arguments of fraudulent inducement and breach by Travelodge. As noted, we agree with the District Court's findings of law and application of the law to the facts of the case on the fraudulent inducement issue. Consequently, we find no clear error, nor error in law, in the District Court's finding that Honeysuckle breached the agreement.[4]

C. Evidentiary Rulings

Honeysuckle contends the District Court committed reversible error in two evidentiary decisions. First, Honeysuckle contends it was improperly barred from introducing into evidence a receipt for the uniform offer circular that it determined, after the trial had begun, included a forgery of Richardson's signature. Honeysuckle sought to introduce the receipt to demonstrate a pattern of fraudulent behavior by a Travelodge salesman. The District Court rejected admission of the receipt, stating that Honeysuckle had access to the receipt from the beginning of discovery and that the new contention should have been raised earlier so as to give Travelodge time to investigate it. Honeysuckle now contends, though without offering any support, that the District Court erred in barring the evidence. It also contends the District Court could have continued the trial to give Travelodge time to investigate and respond. The only case Honeysuckle cites in support is not applicable. *See Nutt v. Black Hills State Lines*, 452 F.2d 480, 483 (8th

---

[4] For the same reasons, we find Honeysuckle has not shown clear error by the District Court for failing to find breach of the covenant of good faith and fair dealing.

11

Cir. 1971) (holding a last minute *pretrial* attempt to introduce expert testimony to support a new element for trial should have been barred, or, if the introducing party refused, the court should have granted a reasonable continuance). Honeysuckle has not shown the District Court abused its discretion in barring evidence of the allegedly forged receipt.

Second, Honeysuckle contends the District Court erred by excluding evidence of prior bad acts by one of the Travelodge salesmen who worked on the Honeysuckle agreement. The evidence, testimony by an employee of Travelodge's parent company, concerned the circumstances surrounding the firing of the salesman, which Honeysuckle contended included using his own credit card to pay for another franchisee's business so as to meet his sales quota. The District Court barred this testimony, finding it was irrelevant under Fed. R. Evid. 401, and even if relevant, that it was unduly prejudicial under Fed. R. Evid. 403. In addition, the District Court determined the proffered character evidence was not admissible under Fed. R. Evid. 404(b), which bars evidence of prior bad acts to show conformity with character. We find no abuse of discretion by the District Court in barring admission of this evidence.

IV.

We will affirm the judgment of the District Court.