**Eva Lucille RICHARDSON, Plaintiff-Appellee,**

v.

**George GIBALSKI, Trustee, Chattanooga Hotel Corporation d/b/a Hotel Patton, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 2, 1979.

Permission to Appeal Denied by Supreme Court Sept. 28, 1981.

Goins, Gammon, Baker, Robinson & Knight, Chattanooga, for defendant-appellant.

Wild & Harrison, Chattanooga, for plaintiff-appellee.

OPINION

SANDERS, Judge.

The single issue on this appeal is whether or not punitive damages are allowable under the facts of this case.

The Plaintiff-Appellee, Eva Lucille Richardson, sued the Defendant-Appellant, George Gibalski, Trustee, Chattanooga Hotel Corporation d/b/a Hotel Patton, for damages. The Plaintiff was a permanent resident guest of the hotel on July 3, 1977. About 11:30 a. m. on that date Ervin Evans, a young black male about 16 years of age, checked into the hotel. He was assigned room No. 536. The Plaintiff was a resident of room 518. About 15 minutes after Evans checked in the Plaintiff went to her room. Not realizing anyone was in her room, she entered and as she was closing the door behind her Evans grabbed her around the neck and began choking and beating her. He raped her and robbed her of a small amount of money. Evans was apprehended shortly after the incident and all the evidence indicates he gained entrance to the Plaintiff's room by the use of his key to room 536.

In her complaint the Plaintiff alleges the Defendant did not provide an adequate lock on her room and failed to take other adequate security measures to protect its guests. She sued for both compensatory and punitive damages. The case was tried before a jury which found the issues in favor of the Plaintiff and fixed her compensatory damages at $35,000 and awarded punitive damages in the amount of $30,000.

The Defendant filed a motion for a judgment notwithstanding the verdict as to punitive damages or, in the alternative, to grant a new trial as to punitive damages. Defendant's motion for a new trial was overruled and it has appealed, assigning the action of the Court as error. In support of its assignment of error Defendant says there was no material evidence to justify submitting the issue of punitive damages to the jury and there was no material evidence to justify an award of punitive damages against the Defendant.

The young man, Evans, who committed the assault and robbery on the Plaintiff was apprehended by police shortly after the incident occurred. He had on his person at the time the key to room 536. The officers tried the key on the lock to Plaintiff's room 518 and it would both unlock and lock the door. The proof fails to show when the Hotel Patton was built but all indications are that, from a hotel standpoint, it was of ancient vintage. The locks on the doors were made for the use of the "skeleton key" type rather than the more modern "Yale lock" type. Plaintiff's sole theory of Defendant's negligence was predicated on the premise that numerous keys to different rooms would unlock other rooms; this was known to management of the hotel and their failure to change the locks was negligence.

While there is proof that prior to the incident here involved, management had some knowledge of isolated instances of the key of one room fitting the lock of another, most of the testimony relates to what some individual who was not an employee of the hotel knew or to what some maid knew before the incident occurred, or was hearsay. The proof showed there had previously been only one incident in the hotel pertaining to a theft which might have been related to the use of a key for unlocking a door it was not intended for. In 1974 a theft was reported from room 750. Although the room had been locked there was no evidence of forcible entry. The officer who investigated this burglary, without giving any basis for his statement to the manager of the hotel at that time, said, "I asked Mr. Sigmund if he was cognizant of the fact that keys to one room also unlocked the doors to the rooms on the same floor and other floors in the hotel which he replied yes. I advised him—well, I asked him if they planned—if he did plan to replace the locks all over the building to keep the investigations like I was doing from happening again. He replied that financially from a financial standpoint it would be unfeasible to do so."

On cross-examination, when asked about the basis for his statement to the hotel manager, he testified:

"Q And I believe that you have previously testified that you found that one key from one room happened to fit another room, is that correct?

"A Yes.

"Q And I believe that you were previously asked did you check any other rooms and you answered, 'I don't recall,' is that correct, sir?

"A Yes.

"Q So, you determined in 1974 that a key from one room happened to fit another room and you did not check that key against any other rooms, is that what you've just said? Isn't that what you testified before?

"A Yes."

Eloise Bryant testified she was a maid at the hotel for about a year and she had heard talk among some of the maids that some keys to some doors would unlock doors to other rooms. She said she had reported this to Gwen Martin, maid supervisor. However, Mrs. Martin testified she could not recall having received such a report.

Linda Jones was a maid at the hotel for two years and on two occasions during this time she saw a person use a key from one room to unlock another room.

Mr. Derenick, who was manager of the hotel at the time the incident occurred, testified that prior to the occurrence of this incident he knew of no one who had any knowledge of the keys fitting doors they were not supposed to fit. After the incident occurred, at the request of the attorneys for the hotel, he made a check of the rooms to determine how many could be unlocked by keys of other rooms. He did not check the first two floors because the doors on these floors all had Yale locks on them, but he made a spot check of approximately 20 rooms out of 38 on each floor from the third floor through the ninth and found only three or four that could be unlocked by keys from other rooms.

Aside from the isolated theft of 1974 there was no proof of any problems of any guests in the hotel. We also think it of significance that, although there had been instances of rooms being unlocked by keys from other rooms, there had never been a previous instance where that had happened to room 518. Also, it was found the second key to room 536 would not unlock room 518.

As has been pointed out by our appellate courts so many times, it takes something far greater than lack of ordinary care to sustain an award for punitive damages. In the case of *Inland Container Corporation v. March*, (1975) Tenn., 529 S.W.2d 43, the court said:

> "Punitive damages are allowed under Tennessee law and are given in excess of compensatory damages and in addition thereto. They are awarded in cases involving fraud, malice, gross negligence or oppression. *Knoxville Traction Co. v. Lane*, 103 Tenn. 376, 53 S.W. 557 (1899); or where a wrongful act is done with a bad motive or so recklessly as to imply a disregard of social obligation, *Stepp v. Black*, 14 Tenn.App. 153 (1931); or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to consequences.

> *Honaker v. Leonard*, 325 F.Supp. 212 (E.D.Tenn.1971)."

Again, in *Southeastern Aviation, Inc., v. Hurd*, 209 Tenn. 639, 355 S.W.2d 436 (1962), the court said:

> "The rule in this State is that punitive or exemplary damages is allowable for negligence only where such negligence is so gross and wanton as to 'raise a presumption of conscious indifference to consequences.' *Railway Co. v. Lee*, 90 Tenn. 570, 18 S.W. 268; *Consolidated Coach Co., Inc. v. McCord*, 171 Tenn. 253, 258, 102 S.W.2d 53; *Inter-City Trucking Co. v. Daniels*, 181 Tenn. 126, 130, 178 S.W.2d 756.

> " 'Exemplary damages are only allowed where a wrongful act is done with a bad motive, or so recklessly as to imply a disregard of social obligations, or where there is negligence so gross as to amount to positive misconduct. *Railroad Co. v. Guinan*, 11 Lea, (98) 103.' *Railway Co. v. Lee*, supra."

Certainly there was no malice, fraud or oppression involved in the case at bar, nor is there any contention there was. Nor are we able to find from the proof that there was any act done with a bad motive or so recklessly as to imply a disregard of social obligation, nor was there any willful misconduct or entire want of care as to raise a presumption of conscious indifference to consequences. Also, as pointed out by the Supreme Court in *Huckeby v. Spangler*, (1978) Tenn., 563 S.W.2d 555:

> "In this state, the theory of punitive damages is not to compensate an injured plaintiff for personal injury or property damage, but to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him. See *Inland Container Corp. v. March*, 529 S.W.2d 43 (Tenn.1975); *Liberty Mutual Ins. Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760 (1963); *Knoxville Traction Co. v. Lane*, 103 Tenn. 376, 53 S.W. 557 (1899)."

The assignment of error is sustained. The judgment of the Trial Court is modified to disallow punitive damages. To the ex-

tent the judgment is not modified it is affirmed. The cost of this appeal is taxed to the Appellee.

GODDARD, J., and LUKE M. McAMIS, Special Judge, concur.