Yasuko N. SAKAMOTO, Administratrix of the Estate of Henry H. Sakamoto, for the Benefit of Yasuko N. Sakamoto, Next Friend and Mother of Taro Sakamoto, a Minor, and Hanako Sakamoto, a Minor, Plaintiffs-Appellees,

v.

N.A.B. TRUCKING CO., INC., and John A. Walkup, Defendants-Appellants.

No. 82–5452.

United States Court of Appeals, Sixth Circuit.

Argued June 27, 1983.

Decided Sept. 27, 1983.

Rehearing Denied Nov. 2, 1983.

Samuel R. Anderson (argued), Luther, Anderson, Cleary & Ruth, Kenneth R. Starr, Chattanooga, Tenn., for defendants-appellants.

Flossie Weill, Harry Weill (argued), Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for plaintiffs-appellees.

Before EDWARDS, Chief Judge, ENGEL, Circuit Judge, and BERTELSMAN, District Judge.*

BERTELSMAN, District Judge.

This is a diversity wrongful death action arising out of an automobile-truck accident on Interstate Highway 75 in the State of Tennessee.

The following facts were stipulated:

On September 28, 1978, defendant John A. Walkup,** an employee of defendant N.A.B. Trucking Co., Inc. (N.A.B.), was driving a loaded tractor-trailer from Columbus, Ohio, to Jacksonville, Florida. Near Knoxville, Tennessee, Walkup called an N.A.B. dispatcher to report that his tractor was malfunctioning. The dispatcher instructed Walkup to drive the rig to Warner Robins, Georgia, if possible. Walkup tried to comply with this request, but in the early

---

* Hon. William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

** After the oral argument herein the case against Walkup was settled.

evening of September 28, the tractor completely broke down on I–75, some 85 miles south of Knoxville.

Walkup reported his predicament to the N.A.B. dispatcher. He was told to get a motel room and wait for a replacement tractor. Walkup declined to take a motel room and instead informed the dispatcher that he would wait for the new tractor in a nearby motel lobby.

An N.A.B. wrecker operator arrived with the replacement tractor on the early morning of September 29. After swapping the tractors, the two N.A.B. employees decided to have breakfast together. To accomplish this, Walkup did something very foolish; indeed, it turned out to be fatal. Apparently, the two men had decided to go to a restaurant at an exit just north of the breakdown location. Instead of going south to the next exit on I–75 and returning north, Walkup tried to turn his rig around on the highway so that he could proceed north on the southbound lanes of I–75 and exit at a nearby entrance ramp. Unfortunately, Walkup's tractor-trailer got stuck midway through the turn with the result that the tractor-trailer blocked both southbound lanes of I–75 and the left berm. To make matters worse, Walkup was unable to set flares to warn approaching traffic because the flare compartment in the new tractor's cab was jammed shut. Shortly thereafter, the plaintiff's decedent, Henry H. Sakamoto, slammed into the disabled tractor-trailer in the fatal accident that was the basis for this lawsuit.

In addition to the preceding facts, it is important to note that there was also evidence to the effect that Walkup had been without sleep for more than 40 hours at the time of the accident and was a habitual user of amphetamines, that N.A.B. knew or should have known of these facts, and that insufficient warning lights were operating on the truck at the time of the accident.

The trial of this case was bifurcated, liability being tried first and the damages issues being tried immediately thereafter to the same jury. The defendants conceded during the first phase of the trial that they were guilty of ordinary negligence. The issues tried were whether there was any gross negligence, whether punitive damages should be assessed against one or both defendants and, if so, in what amount, and how much compensatory damages should be awarded.

After the liability phase of the case, the jury found that both Walkup and N.A.B. had been guilty of gross negligence, and that both defendants were liable to the plaintiffs. In the damages phase, the jury awarded the plaintiffs $300,000 in compensatory damages and $1 million in punitive damages. The defendants were found jointly and severally liable for the compensatory damages, but N.A.B. was assessed $900,000 of the punitive damages while Walkup was assessed only $100,000. Following remittitur, a final judgment was entered in the amount of $300,000 compensatory damages jointly against both defendants, $300,000 in punitive damages against N.A.B., and $100,000 in punitive damages against Walkup.

On appeal, N.A.B. argues that the judgment below should be reversed for four reasons: (1) because there was no evidence of gross negligence on N.A.B.'s part, an award of punitive damages against N.A.B. was unwarranted; (2) it was error for the trial court to permit the jury to render separate awards of punitive damages against the defendants; (3) the punitive damages award was excessive; and (4) the trial court erred to the prejudice of N.A.B. when it added another interrogatory to the special verdict form after the closing arguments.

 Having thoroughly reviewed the record and the transcript herein, the court is of the opinion that there was, under Tennessee law, sufficient evidence of gross negligence on the part of Walkup and N.A.B. to justify the submission of the punitive damages issues to the jury.[1] Also,

---

1. The present definition for conduct for which punitive damages would be allowed under Ten-

nessee law may be found in *Richardson v. Gi-*

the court cannot say that the amount of punitive damages awarded was excessive. These matters were vigorously argued to the trial judge both during and after trial, and this court is constrained to respect his rulings on these issues of state law.[2]

A much more difficult question is presented, however, by the procedural history of this case, which requires the court to apply F.R.Civ.P. 49(a), 49(b) and 51 in a somewhat unusual context. To clarify the issues presented, it is necessary to review the developments in the case as the trial proceeded.

Prior to closing arguments, the trial court showed counsel a verdict form that contained three special interrogatories.[3] None of the interrogatories dealt with the independent gross negligence of N.A.B. Both counsel stated that the verdict form was acceptable.

The plaintiffs' argument was divided. In the initial portion of his closing argument, plaintiffs' attorney forcefully argued the independent negligence of N.A.B.[4] No objection was made by counsel for the defendant to this argument.

During his closing argument, defendants' attorney did not address the issue of the separate negligence of the trucking company but argued that the driver was not guilty of gross negligence. In the final segment of his closing argument, plaintiffs' attorney only briefly referred to the independent negligence of the trucking company and spent most of his time on the issue of the alleged contributory negligence of plaintiffs' decedent.

At the conclusion of the closing arguments, the trial judge, following his customary practice, gave an extensive oral instruction, during which he summarized the contentions of the parties.

After relating this somewhat lengthy prologue, then, we come to the crux of this

---

*balski,* 625 S.W.2d 715 (Tenn.App.1979), as follows:

"As has been pointed out by our appellate courts so many times, it takes something far greater than lack of ordinary care to sustain an award for punitive damages.... They are awarded in cases involving fraud, malice, gross negligence or oppression ... or where a wrongful act is done with a bad motive or so recklessly as to imply a disregard of social obligation, ... or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to consequences ... or to amount to positive misconduct."

2. *Transamerica Insurance Group v. Beem,* 652 F.2d 663, 665 n. 3 (6th Cir.1981), and cases there cited.

3. The verdict form read:

VERDICT FORM
Special Issues

"(1) We, the jury, find that the defendant, JOHN A. WALKUP, (was—was not) guilty of gross negligence that proximately caused or proximately contributed to cause the accident that occurred upon September 29, 1978.

"(2) We, the jury, find that the plaintiff's decedent, Henry H. Sakamoto, (was—was not) guilty of negligence which proximately contributed to cause the accident that occurred upon September 29, 1978.

"(3) [If your answer to Issue No. (2) is that the plaintiff's decedent, Henry H. Sakamoto, "was not" guilty of proximate contributory negligence, then answer Issue No. (3)] We, the jury, find that the plaintiff's decedent, Henry H. Sakamoto, (was—was not) guilty of remote contributory negligence with regard to the accident that occurred upon September 29, 1978.

General Verdict

"(4) We, the jury, find that the plaintiff, YASUKO N. SAKAMOTO, Administratrix of the Estate of Henry H. Sakamoto, (is—is not) entitled to recover of the defendants, N.A.B. TRUCKING CO., INC., and JOHN A. WALKUP."

---

Jury Foreperson

4. Plaintiff's counsel stated in part:

"Now, ladies and gentlemen, in addition to that, on top of that, the defendant N.A.B. Trucking Company is liable for gross negligence in addition to the negligence that they are liable for by their employee, John Walkup, from the illegal, willful and wanton conduct in the following respects: One, despite the obvious danger to other motorists on the highway, N.A.B. Trucking Company's dispatcher directed John Walkup, who reported the mechanical problems up above Knoxville, to proceed from Knoxville to Waycross, Georgia, without having the tractor inspected or repaired. They didn't care about who got killed or who got injured, their interest was getting that load of dog food down to Jacksonville, Florida.

"Now, that is wanton conduct." (Tr. 473).

appeal. During the course of his oral instructions, without having previously advised counsel of his intentions, the trial judge stated as follows:

"Now, in this case, turning more directly to the issues that will be for your decision, I read those issues to you before the argument of counsel.

"Since having read them to you, I have decided that it would be appropriate to add one additional issue in the case for your consideration, and therefore, I think I will just reread the verdict form to you at the present time. And I will point out to you the additional issue that I have added since the inception of the argument of the case. (Tr. 507).

* * * * * *

"Then I have added, since reading this verdict form to you, a second issue that relates to the defendant N.A.B. Trucking Company, and it reads as follows: '*Apart from the acts or omissions on the part of its driver, John A. Walkup, we, the jury, find that the defendant, N.A.B. Trucking Company, Incorporated, blank, either was or was not guilty of gross negligence that proximately caused or proximately contributed to cause the accident that occurred upon September 29, 1978.*'

"Now, that issue is based upon the plaintiff's contention that N.A.B. Trucking Company was guilty of gross negligence not only by reason of the gross negligence as it contends on the part of the driver, Walkup, but also that even apart from the acts of omissions of the driver, that N.A.B. was guilty of gross negligence. And that's the basis of that issue." (Tr. 508). (Emphasis added).

Defendants' counsel seasonably objected to the addition of this interrogatory on the ground that "for the very first time, this verdict form then presents an issue in the lawsuit of the independent gross negligence of" the trucking company. (Tr. 530).

The liability phase of the case was then presented to the jury, which found, so far as pertinent here, that the truck driver had been guilty of gross negligence and, in answer to the added interrogatory, that the trucking company was guilty of independent gross negligence. The general verdict was in favor of the plaintiffs against both the driver and the trucking company.

The damages phase of the case was then tried.

In the course of his instructions at the conclusion of that phase of the case, the trial court reminded the jury that it had "heretofore found in this lawsuit that the defendants were guilty of proximate gross negligence with reference to the accident that resulted in Mr. Sakamoto's death." (Tr. 826). It then submitted separate interrogatories on the amounts of punitive damages to be assessed against the driver and the trucking company.

Following the remittitur, a final judgment was ultimately entered in the amount of $300,000 in compensatory damages against the trucking company and the driver jointly, and $300,000 in punitive damages against the trucking company and $100,000 in punitive damages against the driver.

By reason of these events, the appellant trucking company emphatically urges upon this court that a violation of F.R.Civ.P. 51 has occurred by which it has been substantially prejudiced, because it was unfairly surprised by the giving of the additional interrogatory after closing argument.

A review of the text of Rule 51 reveals that its application to the situation herein described is not immediately obvious.

Rule 51.

INSTRUCTIONS TO JURY: OBJECTION

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. *The court shall inform counsel of its proposed action upon the request prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.* No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider

its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis added).

Plaintiffs-appellees' counsel had requested an interrogatory on N.A.B.'s independent gross negligence. Because no interrogatory on N.A.B.'s independent gross negligence was included in the original verdict form, N.A.B. maintains that it was led to believe that the request had been refused. N.A.B. contends that it was prejudiced by the addition of the interrogatory after summation because it was lulled into not mentioning this issue to the jury, believing that it was no longer an open question. Moreover, N.A.B. argues that it was error for the trial court to submit an interrogatory to the jury which its counsel had no opportunity to see or comment upon prior to closing arguments.

Plaintiffs-appellees respond that the trial court was using special interrogatories accompanying a general verdict, pursuant to F.R.Civ.P. 49(b), and therefore it was not necessary that they be shown to counsel prior to argument. They also point out that their contentions with regard to the independent negligence of the trucking company were clear throughout the proceedings up to and including the motion for a directed verdict and the initial phase of their closing argument.

To resolve this issue, it is necessary to consider not only Rule 51, *supra,* but also F.R.Civ.P. 49, the text of which is set out in the margin.[5]

Our analysis is not aided by the fact that there is some confusion in the authorities on the interplay of Rules 49(a), 49(b) and 51. Although there has been some misleading language in some of the opinions, we believe the cases can be harmonized.

In addressing this task, it is essential to distinguish between a Rule 49(a) special verdict and special interrogatories submitted under Rule 49(b). A Rule 49(a) special verdict is designed to cover all of the material factual issues in the cases.[6] Its

**5.** Rule 49.

SPECIAL VERDICTS AND INTERROGA-
TORIES

"(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

"(b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interroga-
tories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

**6.** *Harville v. Anchor-Wate Co.,* 663 F.2d 598, 602 (5th Cir.1981); *National Bank of Commerce v. Royal Exchange Assurance of America, Inc.,* 455 F.2d 892, 898 (6th Cir.1972); Wright & Miller, *Federal Practice & Procedure,* § 2506 at 499 (1971).

purpose is to ascertain how the jury has resolved these issues. The court is to enter a judgment on the basis of the jury's answer to the special verdict interrogatories without using a general verdict.[7] Not surprisingly, therefore, it has been held that Rule 51 requires that counsel be advised at least of the court's intent to use Rule 49(a) interrogatories, so that counsel may have an opportunity pursuant to Rule 51 to make special requests for interrogatories and supplemental instructions.[8]

As one court has pointed out, this practice "is required to enable counsel intelligently to prepare requested charges, determine all of the issues which must be submitted, and then to plan an effective argument whose objective is to translate persuasion into specific decisive action by the jury."[9]

Where the case is complex or the issues have developed late in trial, it has also been held that it may be an abuse of discretion for the trial court not to disclose in advance the exact form of the Rule 49(a) interrogatories it proposes to use.[10] One court has even held that it is mandatory to show all proposed Rule 49(a) special interrogatories to counsel in advance of final argument.[11]

■ There being no authority with regard to this issue in this circuit, we hereby adopt the following view with regard to the interrelationship of Rule 49(a) and Rule 51. We consider it the better and safer practice in all cases where Rule 49(a) is to be employed for the trial court to submit the actual special interrogatories and supplementary instructions to counsel in writing in advance of argument. But we hold that the disclosure prior to final argument of at least the substance of the Rule 49(a) special verdict interrogatories and supplemental instructions is mandatory.

■ Further, we note that it may be an abuse of discretion to fail to show the Rule 49(a) interrogatories to counsel in advance of argument where, because of exceptional circumstances, such as the complexity of the case, unfairness would otherwise result.

These views are in accord with the generally accepted interpretation of Rule 51 that in the federal courts counsel have no right to be apprised of the exact language of any instruction, even where special requests are made. Indeed, in federal practice, the court may instruct orally and the form of the instructions is within its discretion, so long as their substance is correct, and the parties have been substantially advised of the rulings on counsel's requests.[12] Although it is obvious that Rule 49(a) interrogatories must be reduced to writing, we do not feel justified, considering traditional practice under Rule 51, in following the Third Circuit in holding that submitting the interrogatories to counsel in advance of argument is always mandatory.

We hasten to distinguish this court's decision in *Brown v. Tennessee Gas Pipeline Co.*[13] As the text of that case clearly indicates, this was a Rule 49(b) case, where, as provided in that sub-rule, the special interrogatories were used to *test* a general verdict. This court correctly pointed out that, where Rule 49(b) is employed, there is no necessity, and it may even be undesirable, to submit the interrogatories to counsel in advance of argument, because it would defeat the *testing* function of Rule 49(b) interrogatories if counsel were permitted to suggest to the jury in argument how they should be answered.[14]

---

7. Wright & Miller, *supra* note 7, § 2510 at 519–520.

8. *Clegg v. Hardware Mutual Casualty Co.,* 264 F.2d 152, 157 (5th Cir.1959).

9. *Id.*

10. *Cutlass Productions, Inc. v. Bregman,* 682 F.2d 323, 330 (2d Cir.1982).

11. *Smith v. Danyo,* 585 F.2d 83, 88 (3d Cir. 1978).

12. 5A *Moore's Federal Practice* ¶ 51.06 (1982).

13. 623 F.2d 450 (6th Cir.1980).

14. Some confusion has arisen by reason of the fact that the case of *Cramer v. Hoffman,* 390 F.2d 19 (2d Cir.1968), which stated it was discretionary with the court to show interrogatories to counsel in advance of argument, has been discussed by some courts as a Rule 49(a) case when a careful reading of the opinion shows it was a Rule 49(b) case. Therefore, we

Our difficulties in dealing with the sometimes ambiguous precedents on this subject are compounded by the equivocal use of the special interrogatories in this case. Analysis of the record reveals that the trial court, although submitting the special interrogatories in conjunction with a general verdict, did not use them for the purpose of *testing* that verdict, but for determining the jury's resolution of the issue of independent gross negligence of the trucking company. The answers to the special interrogatory submitted in the first phase of the case were used as the basis for submitting to the jury special interrogatories in the damages phase, which permitted them to return punitive damages verdicts against the two defendants in separate amounts. The jury was instructed in the damages phase that independent negligence had already been established by its responses to the interrogatories in the liability phase. The general verdict presented to the jury in the liability phase was in effect superfluous. Therefore, the special interrogatories submitted in the liability phase must be regarded as submitted under Rule 49(a).

█ As we have said, we are of the view that Rule 51, when read in conjunction with Rule 49(a), requires that counsel be advised of the intent of the court to respond to counsel's requests for instructions by using special interrogatories, and of at least the substance of the interrogatories. Here, however, the context of the proceedings indicates that the failure to give the special interrogatory on the issue of the independent negligence of the trucking company was mere inadvertence by the court. This omission could and undoubtedly would have been cured, if called to the court's attention by an objection to counsel for plaintiffs' raising that issue in the first portion of his final argument.

█ In this case, no prejudice resulted from the failure of the trial court to disclose prior to summation the interrogatory concerning the gross negligence of N.A.B.

Counsel for N.A.B. was well aware that the independent gross negligence of N.A.B. was at issue. As the plaintiffs-appellees note, the issue of the independent gross negligence of N.A.B. was raised in the complaint, in a letter to the magistrate, in the final pretrial order, in their requests for jury instructions, and in the testimony of witnesses during the trial. Moreover, in response to N.A.B.'s motion for a directed verdict on the issue of gross negligence, counsel for plaintiffs-appellees emphatically argued that there was sufficient evidence of independent gross negligence on behalf of N.A.B. From the context, it is evident that the motion for a directed verdict was denied in part because the trial judge felt that evidence of independent gross negligence existed. Thus, at the time that the original verdict form was given to the parties, there can be no doubt that the independent gross negligence of N.A.B. was at issue and everyone was aware of it.

Had counsel for N.A.B. understood the tender of the original verdict and interrogatories as being a ruling under Rule 51 that plaintiffs' request to instruct on the independent negligence had been denied by the court, counsel for N.A.B. would surely have made an objection during the closing argument when this issue was raised.

In light of the forceful arguments made on this issue by his adversary, counsel for the trucking company can hardly claim to have been surprised by the special interrogatory. Therefore, this court holds that there was no prejudice in the court's adding the additional interrogatory to cover a matter that everyone knew was crucial in the case but had been inadvertently omitted. This conclusion is confirmed by the consideration that, if counsel had truly felt that he was prejudiced, he could have requested further argument on the additional interrogatory to the jury, and the failure of experienced and able counsel for the defendant to do so, again indicates to this court that there was no surprise on his part

read that case as supporting our discussion herein with regard to both Rules 49(a) and

49(b).

occasioned by the additional interrogatory, and therefore no prejudice. Any error on the part of the trial court was harmless and reversal is not appropriate.[15]

Therefore, the judgment of the trial court must be, and is, hereby AFFIRMED.

---

**15.** F.R.Civ.P. 61; *Clegg v. Hardware Mutual Insurance Co.,* 264 F.2d 152 (5th Cir.1959); *Smith v. Danyo,* 585 F.2d 83 (3d Cir.1978).