**Gabriel RUVALCABA, Plaintiff–Appellant,**

v.

**CITY OF LOS ANGELES; Daryl Gates, Martin Coon, (# 21604) in both their personal and official capacities, Defendants–Appellees.**

No. 97–55353.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1998.

Decided Feb. 5, 1999.

**516**

Donald W. Cook, Los Angeles, California, for the plaintiff-appellant.

Katherine J. Hamilton, Assistant City Attorney, Los Angeles, California, for the defendants-appellees.

Before: FLETCHER, BOOCHEVER, and THOMPSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Plaintiff Gabriel Ruvalcaba was seriously injured during his arrest and apprehension by a Los Angeles Police Department ("LAPD") canine unit. Ruvalcaba brought this action in federal district court pursuant to 42 U.S.C. § 1983, alleging that he was the victim of excessive force during his arrest, and that his treating physician at the jail dispensary was deliberately indifferent to his serious medical needs. He sued, among others, the City of Los Angeles (the "City"), LAPD Chief Daryl Gates ("Gates"), Officer Martin Coon (the canine officer who arrested Ruvalcaba), and Dr. Arthur Sakamoto (the physician who treated Ruvalcaba at the jail dispensary). The district court severed Ruvalcaba's claims against Officer Coon and Dr. Sakamoto from those against the City and Gates. At the close of the evidence, the district court granted Dr. Sakamoto's motion for directed verdict. The jury then returned a verdict in favor of Ruvalcaba against Officer Coon. The district court dismissed the remaining claims against the City and Gates because of the jury's special finding that Officer Coon's use of the dog did not violate Ruvalcaba's constitutional rights.

Ruvalcaba appeals, seeking to have his claims against the City and Gates reinstated, and the grant of directed verdict to Dr. Sakamoto reversed. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Ruvalcaba was an ex-employee of the Mayan Theater and was living there at the time of his arrest. At approximately 2:30 a.m. on May 28, 1989, Ruvalcaba returned to the theater after a night of heavy drinking and went to sleep in the manager's office. Around 3:00 a.m., Los Angeles Police Officers Moore and Morales responded to a burglary call at the Mayan Theater. They were

told by theater employees that an ex-employee had locked himself inside the theater, armed with a pipe and possibly a gun. The officers requested a canine unit.

Standing outside and in front of the theater, Officers Moore and Morales announced themselves as police officers and stated, "The dogs are coming. Give yourself up." The warnings were given in both English and Spanish. The front theater doors were locked with a chain, but the doors could be opened about six to eight inches. The officers stuck their heads through the doors, and announced again in both English and Spanish that the police had arrived and a canine unit had been called. The officers then repeated the same warnings a third time, this time from inside the rear door of the theater.

About an hour later, Officer Martin Coon arrived with his police dog, Smokey. Officer Coon was told by Officers Moore and Morales that they had given several warnings that a canine unit had been called. With no further warning, Officer Coon and Smokey entered the theater through the rear entrance, followed by Officers Moore and Morales. Smokey was unleashed during the search. After searching most of the theater, Smokey alerted near the office where Ruvalcaba was located. Officer Coon opened the door to the office and allowed Smokey to go in, again with no warning that a police dog was present. Officer Coon followed Smokey into the office.

At this point, the stories of Officer Coon and Ruvalcaba differ. Officer Coon testified that as Smokey approached Ruvalcaba, Ruvalcaba, who was on all fours, lunged at Smokey, grabbed him and attempted to fling Smokey into the wall. Ruvalcaba then lost his balance and fell into the desk. The fight lasted only a few seconds. Officer Coon testified that during the entire time of the struggle, he yelled continuously at Ruvalcaba to stop fighting the dog. Officer Coon denied ever kicking or striking, or even touching Ruvalcaba.

In contrast, Ruvalcaba testified that he was sleeping when he awoke to find the dog biting him. Ruvalcaba stated that he tried to fight off the dog by putting his hand into the dog's mouth and biting the dog back. Ruvalcaba stated that he could feel someone striking his head and chest, but could not identify the officer responsible for the blows.

Officer Coon called off the dog after Ruvalcaba was subdued. Moore entered the office to arrest Ruvalcaba and stated that he thought Ruvalcaba was lying on his stomach. When Moore put his knee on Ruvalcaba's chest and started to move Ruvalcaba's hands into proper position, Moore realized that Ruvalcaba was actually on his back. He turned Ruvalcaba over and then handcuffed him. Moore stated that he did not know if he broke Ruvalcaba's ribs when he knelt on him. After a quick pat down, Moore brought Ruvalcaba out of the theater and put him into the squad car. At approximately 5:15 a.m., the police took Ruvalcaba to the Parker Center jail dispensary for medical treatment. Ruvalcaba was moaning, almost incoherent, and complained of severe pain in his chest when Dr. Sakamoto, the treating physician at the jail dispensary, examined him. Dr. Sakamoto failed to take a medical history. He took Ruvalcaba's vital signs, which were normal, and reported that Ruvalcaba's breathing sounds were okay. Sakamoto testified that he routinely would "percuss and oscillate the chest," but there were no notations to that effect on the chart. He also cleaned and sutured two of the dog bite wounds, which were on Ruvalcaba's left forearm and thigh. Twelve hours later, Ruvalcaba was unable to get out of bed.

Approximately thirty-six hours after Ruvalcaba arrived at the jail dispensary, he was taken to County General Hospital where Dr. Julia Cameron examined him. At that time, Ruvalcaba had decreased breathing sounds on the right side of his chest, tenderness in the right rib area, and air in the subcutaneous tissue below his right arm. A chest X-ray confirmed that he had two fractured ribs, a collapsed lung, and blood was collecting inside his chest. Eighteen hours later, Dr. Cameron inserted a tube into the chest to collect the blood. Based upon her initial examination, Dr. Cameron noted that the dog bites were not severe but gave Ruvalcaba a prophylactic antibiotic to prevent infection.

Ruvalcaba's expert, Dr. Peter Meade, testified that Ruvalcaba probably fractured his ribs before he entered the jail dispensary. Ruvalcaba's complaints of severe chest pains and his inability to get out of bed were consistent with fractured ribs, because an injury to the chest wall makes it hard to move. Additionally, the lung probably collapsed at the time of the injury.

The defendants' expert, Dr. Michel Leidner, explained that Sakamoto gave appropriate treatment by cleaning and suturing the wounds. He stated that the collapsed lung was not very serious, because Dr. Cameron waited eighteen hours before inserting the tube to drain the blood. He testified, however, that Sakamoto should have taken a medical history.

Sakamoto testified that Ruvalcaba's pain was consistent with the dog bites and inconsistent with fractured ribs because Ruvalcaba's breathing was "okay" and he did not show increased pain as he took a breath. Dr. Cameron testified that the air under the subcutaneous tissue could have developed after the injury.

Ruvalcaba sued Officer Coon and Dr. Sakamoto under 42 U.S.C. § 1983.[1] Ruvalcaba alleged that Officer Coon violated his Fourth Amendment rights by using excessive force in arresting him, and that Dr. Sakamoto violated his civil rights through Dr. Sakamoto's deliberate indifference in treating his serious medical needs. Ruvalcaba also sued the city of Los Angeles and its police chief, Gates, alleging that the LAPD's dog bite policy was unconstitutional. *See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (providing for municipal liability under § 1983 for injuries caused by the municipality's own unconstitutional or illegal policies).

Over Ruvalcaba's objections, the district court bifurcated the claims against Officer Coon and Dr. Sakamoto from the *Monell* claims against the City and Gates. Because the first phase of the trial would determine only whether Officer Coon used excessive force against Ruvalcaba, the district court precluded Ruvalcaba from offering any evidence to prove the existence of an unconstitutional dog bite policy under *Monell*. That evidence, the district court concluded, was relevant only to the second phase of the trial in which the *Monell* liability of the City and Gates would be determined. If, at the end of the first phase of the trial, the jury determined that Officer Coon did not violate Ruvalcaba's constitutional rights, then Ruvalcaba would have suffered no constitutional injury, and the *Monell* claims against Gates and the City would be dismissed as a matter of law. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam).

During the pretrial status conference, the district court advised the parties that it needed to resolve some factual issues before it could rule on the issue of Officer Coon's qualified immunity. The district court indicated that it would probably submit special interrogatories to the jury to determine those factual issues.

At the close of the evidence, the district court granted Dr. Sakamoto's motion for a directed verdict. Prior to closing arguments, the district court stated that in an excessive force case, it considered the determination of whether an officer enjoys qualified immunity as essentially the same issue as whether the officer used excessive force. In both instances, the issue is whether the officer's actions were reasonable under the circumstances in light of clearly established law. The parties agreed that a preliminary finding on Officer Coon's qualified immunity was unnecessary, and the district court submitted the excessive force issue directly to the jury using a special verdict.[2]

---

1. 42 U.S.C. § 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. The special verdict consisted of two questions. These questions and their answers are referred to hereinafter as the "special verdict," to be distin-

After the parties had completed closing arguments, the district court stated that, in its opinion, all of Ruvalcaba's *Monell* claims alleging an unconstitutional dog bite policy were based solely on Officer Coon's use of the dog, not on Officer Coon's kicking or striking Ruvalcaba. Thus, the court stated that "if the jury should decide excessive force, but [find that] the excessive force is not attributed to the dog or [Officer Coon's] use of the dog, then it seems ... that we still don't get to the *Monell* issue." The district court informed the parties that, if the jury found against Officer Coon on the issue of excessive force, the court would then submit special interrogatories to the jury to further determine whether the excessive force resulted from Officer Coon's kicking and striking Ruvalcaba, or from Officer Coon's use of the dog, or both. Only if the jury found that the excessive force resulted from Officer Coon's use of the dog would the district court proceed with the second phase of the trial. There had been no notice given, however, prior to the completion of closing arguments, that special interrogatories would be submitted to the jury to determine the nature of the excessive force.

Ruvalcaba objected to the special interrogatories as unnecessary, arguing that because Officer Coon's kicks and blows were intended to protect the police dog from Ruvalcaba, those kicks and blows were in furtherance of the dog bite policy. Thus, a jury finding that Officer Coon used excessive force only through kicking or striking Ruvalcaba would not foreclose a finding that the City and Gates were liable under *Monell* for maintaining an unconstitutional dog bite policy. The district court deferred ruling on the objection and instead directed the parties first to draft the language of the special interrogatories.

After this discussion, the jury returned the special verdict, finding that Officer Coon had violated Ruvalcaba's constitutional rights through the use of excessive force, and that the violation was the proximate cause of Ruvalcaba's injuries. The district court then ruled that it would submit special interrogatories to the jury to determine the nature of the excessive force. The parties eventually agreed to submit the following two questions.

1. Do you find that the excessive force used by Officer Coon was due to his use of the dog?

    Answer, yes or no.
    Yes _____ No ___X___

2. Do you find that the excessive force used by Officer Coon was due to his having kicked or struck the plaintiff?

    Answer, yes or no.
    Yes ___X___ No _____

Before the jury returned with answers to the special interrogatories, however, Ruvalcaba objected again. Ruvalcaba argued that because he was informed of the substance of the special interrogatories only after closing arguments were completed, he was effectively precluded from making arguments and offering evidence addressing those special interrogatories. Ruvalcaba also objected on the grounds that the special interrogatories required the jury to reach a unanimous decision on "which blow or kick or bite was excessive." The district court overruled the objections, stating that Ruvalcaba was never foreclosed from making any relevant arguments or offering relevant evidence, and that requiring the jury unanimously to determine the source of the excessive force was proper.

The jury returned the special interrogatories finding that the excessive force was due to Officer Coon's kicks and blows, but not the use of the dog. The district court concluded

---

guished from the "special interrogatories" later given to the jury. The first question asked the jury:

> Do you find, by a preponderance of the evidence, that [d]efendant MARTIN COON violated the constitutional rights of plaintiff GABRIEL RUVALCABA by using excessive force during his apprehension and arrest on May 28, 1989, under the United States Constitution and 42 United States Code section 1983, as defined in the instructions of this court.

Answer "YES" or "NO."
If the jury answered this question "Yes," it was instructed to answer the following second question:

> Was such a violation the proximate cause of injury to plaintiff GABRIEL RUVALCABA as defined in these instructions?
> Answer "YES" or "NO."

that, under *Heller,* Ruvalcaba had suffered no constitutional injury from Officer Coon's actions under the dog bite policy, thereby absolving the City and Gates from any liability under *Monell.* The district court then dismissed the claims against the City and Gates. In determining the damage liability of Officer Coon, the jury awarded Ruvalcaba $60,400 in compensatory damages, and $5,000 in punitive damages.

Ruvalcaba appeals, seeking to have his claims against the City and Gates reinstated, and the grant of directed verdict to Dr. Sakamoto reversed. All parties agree that any and all claims against Officer Coon arising out of this incident have been fully satisfied. Thus, the only defendants remaining on this appeal are the City, Gates, and Dr. Sakamoto ("defendants").

## II. DISCUSSION

### A. *Standing to Appeal and Article III Jurisdiction*

The bulk of Ruvalcaba's appeal alleges numerous errors committed by the district court before and during the liability phase of the trial against Officer Coon and Dr. Sakamoto. The defendants argue that because Ruvalcaba has accepted payment in full of the judgment entered against Officer Coon, he lacks standing to appeal any issues that seek to revisit Officer Coon's liability. Specifically, the defendants argue that Ruvalcaba lacks standing to appeal the following issues: whether the district court erred by (1) allowing Officer Coon to rely on and present evidence supporting a "superior orders" defense; (2) refusing to instruct the jury that following orders is not a defense; (3) precluding Ruvalcaba from offering evidence to challenge Officer Coon's characterization of the City's dog-bite policy; (4) precluding Ruvalcaba from presenting any evidence on the risk of death or serious injury from police dog attacks in general; (5) precluding Ruvalcaba from arguing or instructing the jury that siccing the dog on him was deadly force; (6) denying Ruvalcaba's motions for judgment as a matter of law and directed verdict that siccing the dog on him was per se unreasonable; (7) excluding the "Drameco Kindle"

videotape depicting a LAPD police dog attack in a separate incident; and (8) refusing to instruct the jury that warnings should be given where feasible. Ruvalcaba's claim that the district erred in bifurcating the trial and conditioning the liability of the City and Gates exclusively on Officer Coon's use of the dog also falls into this category.

Any finding of error on these issues, the defendants argue, would necessarily result in a reversal of the entire judgment, not just that portion adverse to Ruvalcaba. Ruvalcaba counters that the district court's errors prevented the jury from finding that Officer Coon's use of the dog constituted excessive force, which in turn resulted in the dismissal of Ruvalcaba's claims against Gates and the City.

■ A prevailing party usually may not appeal a decision in its favor. In an appropriate case, however, a prevailing party may appeal a collateral adverse ruling. *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241, 242, 59 S.Ct. 860, 83 L.Ed. 1263 (1939); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 334, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *United States v. Good Samaritan Church,* 29 F.3d 487, 488 (9th Cir.1994). If the adverse ruling can serve as the basis for collateral estoppel in subsequent litigation, the prevailing party has standing to appeal. *Good Samaritan Church,* 29 F.3d at 489.

■ The district court's order dismissing Ruvalcaba's claims against the City and Gates was a ruling on the merits, and collaterally estops Ruvalcaba from pursuing these claims in the future. Thus, to the extent that Ruvalcaba is a prevailing party appealing from an adverse ruling, Ruvalcaba has standing to appeal any issues resulting in the dismissal of his *Monell* claims. That does not end our jurisdictional analysis, however. We must also determine whether Ruvalcaba's claims are moot.

■ "Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Ruiz v. City of Santa Maria,* 160 F.3d 543, 548 (9th Cir.1998); *Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d

529 (1988). If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction. *See Ruiz,* 160 F.3d at 549; *Deakins,* 484 U.S. at 199, 108 S.Ct. 523; *Chew v. Gates,* 27 F.3d 1432, 1437 (9th Cir.1994); *Sea–Land Serv., Inc. v. International Longshoremen's & Warehousemen's Union,* 939 F.2d 866, 870 (9th Cir. 1991).

■ The remedy that Ruvalcaba seeks on appeal is the reinstatement of his claims against the City and Gates. A subset of the issues he raises relate only to the jury's determination of liability against Officer Coon and not to the derivative liability of the City or Gates. Ruvalcaba asks this court to vacate the jury's finding that Officer Coon's use of excessive force was not the result of his use of the dog. He seeks a remand for a new trial only on that factual issue, while at the same time asking us to affirm the jury's other factual finding that Officer Coon's kicks constituted excessive force. Even if we were able to remand solely for a new trial on the issue whether Officer Coon's use of the dog constituted excessive force, we are foreclosed from doing so. All the parties agree that Ruvalcaba's acceptance of payment in full of the judgment against Officer Coon settles all issues against Officer Coon and no further claims arising from this incident may be brought against him. Thus, the issue of whether Officer Coon's use of the dog constituted excessive force has been fully litigated, and the doctrine of *res judicata* precludes Ruvalcaba from reopening that issue on remand. *See Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1404 (9th Cir.1993) (listing requirements of res judicata).

We hold that Ruvalcaba's appeal, to the extent it raises issues relating only to Officer Coon's liability on use of the dog, is moot for lack of an available remedy, and we lack Article III jurisdiction over those claims.

We further address, however, Ruvalcaba's remaining claims concerning the dismissal of his claims against the City, Gates and Dr. Sakamoto.

**B.** *The Special Interrogatories*

Ruvalcaba asserts that submission of the special interrogatories constituted error for two reasons. First, Ruvalcaba was not informed of the substance of the special interrogatories prior to closing arguments, and therefore could not tailor his arguments around those questions. Second, the special interrogatories were used improperly by the district court because the court erroneously assumed that Officer Coon's kicks were not in furtherance of the City's dog bite policy. Ruvalcaba argues that he was prejudiced by this error because the district court relied on the answers to the special interrogatories to dismiss Ruvalcaba's claims against the City and Gates.

**1.** *Failure to Inform Counsel of the Substance of the Special Interrogatories Prior to Closing Arguments*

■ The decision "[w]hether to submit special interrogatories to the jury is a matter committed to the discretion of the district court." *Acosta v. City & County of San Francisco,* 83 F.3d 1143, 1149 (9th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 514, 136 L.Ed.2d 403 (1996). Accordingly, we review for an abuse of discretion the district court's decision to inform the parties of the substance of special interrogatories after closing arguments. *See Binder v. Long Island Lighting Co.,* 57 F.3d 193, 199 (2d Cir.1995); *Sakamoto v. N.A.B. Trucking Co.,* 717 F.2d 1000, 1006 (6th Cir.1983).

■ This court has not yet decided the specific question of when a district court must disclose the substance of special interrogatories to the parties. It has, however, addressed the similar question of when the substance of a special verdict must be disclosed. In *Landes Constr. Co. v. Royal Bank of Canada,* 833 F.2d 1365 (9th Cir. 1987), this court stated, in dictum, that "[t]he form of the [special] verdict should be decided before closing argument so that counsel may structure their arguments, and the court its instructions, accordingly. The failure to follow this practice may constitute reversible error." *Id.* at 1374 (citations omitted). *Landes* cited *Sakamoto v. N.A.B. Trucking Co., supra,* and *Smith v. Danyo,* 585 F.2d 83

(3d Cir.1978), both of which present facts similar to those presented in this appeal.

In Sakamoto, the district court submitted a special interrogatory to the jury after counsel had finished their closing arguments, and without previously advising the parties that it was doing so. Sakamoto, 717 F.2d at 1004. The additional question was needed to determine whether punitive damages would be available in the damages phase. The Sixth Circuit stated:

> We consider it the better and safer practice ... for the trial court to submit the actual special interrogatories and supplemental instructions to counsel in writing in advance of argument. But we hold that the disclosure prior to final argument of at least the *substance* of the ... special verdict interrogatories and supplemental instructions is mandatory.

Id. at 1006 (emphasis added). The court held that the failure to disclose the substance of the special interrogatory to the parties was an abuse of discretion. Id. at 1007. The court also held, however, that the error was harmless because the defendants were otherwise aware of the issue contained in the special interrogatories and could not claim to have been surprised by it. Id. The Second Circuit agrees with the position taken by the Sixth Circuit. See Binder, 57 F.3d at 199 ("it is the better practice under Rule 49(a) to submit special interrogatories to counsel prior to summation" (quotations omitted)).

In Smith v. Danyo, supra, the Third Circuit went further than the Sixth Circuit in holding that both the form and substance of special interrogatories must be disclosed to the parties prior to summation. Smith stated that the exact wording of special interrogatories is very significant, and "counsel should know it before they have their last opportunity to address the jury." Smith, 585 F.2d at 88. The Smith court held that "the practice of depriving counsel of the opportunity to see and comment upon special verdict interrogatories prior to their closing argument" was an abuse of discretion. Id. Like Sakamoto, however, Smith held that any error was harmless because the failure to disclose the special interrogatories prior to closing arguments was not prejudicial. Id.

We now expressly hold that a district court shall disclose at least the substance of special interrogatories before closing arguments have been completed. Further, while we agree that it is "the better and safer practice ... for the trial court to submit the actual special interrogatories ... to counsel in writing in advance of argument," Sakamoto, 717 F.2d at 1006, whether that failure results in error will depend on the nature of the questions in the particular case.

In this case, the parties were not told prior to closing arguments that special interrogatories would be used to determine the nature of the excessive force. The fact that both parties participated in drafting the final language of the special interrogatories is irrelevant because the drafting took place after closing arguments. At that point, counsel no longer had the opportunity to " 'plan an effective argument whose objective is to translate persuasion into specific decisive action by the jury.' " Sakamoto, 717 F.2d at 1005 (quoting Clegg v. Hardware Mut. Cas. Co., 264 F.2d 152, 157 (5th Cir.1959)).

Ruvalcaba argues on appeal that had he been given notice of the substance of the special interrogatories prior to his argument to the jury, he would have argued that all of the force used by Officer Coon—both the kicking and the siccing of the dog—was the result of an unconstitutional dog bite policy. The district court ruled that despite the lack of notice, Ruvalcaba was never precluded from arguing his theory to the jury, and the district court would not speculate as to whether Ruvalcaba in fact would have done so. That, however, misses the point. Knowledge of what issues the special interrogatories would address was necessary to allow Ruvalcaba to shape his closing argument. We hold that the district court abused its discretion by failing to inform the parties of the substance of the special interrogatories prior to closing arguments.

Given the record before us, however, we find that the error did not result in any prejudice to Ruvalcaba. First, it is not clear that Ruvalcaba did not actually make the arguments he asserts were precluded by the

error. During his closing argument, Ruvalcaba made several references to the fact that Officer Coon kicked Ruvalcaba in order to protect his dog. Second, the argument that both the kicks and dog bites were the result of the city's dog bite policy would not have affected the jury's answers to the special interrogatories. The questions themselves do not assume that the City's and Gates' liability depends on a finding that excessive force was due to the use of the dog. The special interrogatories simply ask what acts constituted the excessive force, independent of whether the dog-bite policy gave rise to those acts. Whether both types of force used by Officer Coon—the kicking and the siccing of the dog—were the result of the dog bite policy is a separate issue concerning the district court's interpretation of the answers to the special interrogatories.

Ruvalcaba needed to convince the jury that Officer Coon's use of the dog on Ruvalcaba was unreasonable, and he argued as much throughout his entire summation. Although the jury found against him on that issue, the result was not affected by the district court's decision to submit the special interrogatories without providing notice of their substance to the parties prior to summation. Rather, the prejudice arose from the district court's interpretation of the special interrogatories, which we address below.

Because Ruvalcaba was not prejudiced by the district court's failure to notify counsel of the substance of the special interrogatories until after summations, we hold that the error was harmless.

### 2. Dismissal of Claims Against the City and Gates

■ Ruvalcaba alleges that the district court erred in dismissing Ruvalcaba's *Monell* claims based on the incorrect conclusion that Officer Coon's kicks and blows were not the result of the City's dog bite policy. He first argues that the special interrogatories did not decide the issue whether he suffered constitutional injuries due to Officer Coon's use of his dog, because the jury might have found Officer Coon's actions reasonable because he was following departmental policy.

The Supreme Court, however, has flatly rejected such an argument:

> The difficulty with this position is that the jury was not charged on any affirmative defense such as good faith which might have been availed of by the individual police officer. Respondent contends ... that even though no issue of qualified immunity was presented to the jury, the jury might nonetheless have considered evidence which would have supported a finding of such immunity. But the theory under which jury instructions are given by trial courts and reviewed on appeal is that juries act in accordance with the instructions given them, and that they do not consider and base their decisions on legal questions with respect to which they are not charged.

*Heller,* 475 U.S. at 798, 106 S.Ct. 1571 (citation omitted). In this case, as in *Heller,* the jury was not instructed on qualified immunity or good faith, and is presumed not to have based its decision that Officer Coon's use of the dog did not constitute excessive force on those grounds. *Id.*

■ Second, Ruvalcaba argues that because all the force used by Officer Coon was the result of the City's dog bite policy, he should be able to pursue a *Monell* claim based upon the jury's finding that Officer Coon used excessive force by kicking and striking Ruvalcaba. In his amended complaint, Ruvalcaba alleged as unconstitutional the LAPD's policies of: training canine officers to strike suspects who resist the dog attacks, improperly selecting officers prone to excessive force to become canine officers, and inadequately training canine officers to limit the amount of force they use. That is, Ruvalcaba argues that he sufficiently raised an issue of fact whether there was a connection between the City's dog bite policy and Officer Coon's striking and kicking Ruvalcaba. The district court disagreed.

■ We believe that Ruvalcaba sufficiently established issues of fact whether Officer Coon kicked Ruvalcaba in an attempt to protect the police dog, and whether the kicks were in furtherance of the City's dog-bite policy. Thus, we hold that the district court erred by dismissing the claims against the

City and Gates based on the jury's answers to the special interrogatories. We remand to the district court to reinstate those claims against the City and against Gates, in both his official and individual capacities.[3]

■ We note that Ruvalcaba's victory may be a hollow one because on remand, he may no longer seek compensatory damages. Such damages are unavailable because Ruvalcaba has already been fully compensated for his injuries attributable to Officer Coon's kicks and blows. No compensatory damages were awarded for Ruvalcaba's dog bite injuries because the jury found that they did not result from the use of excessive force. The fact that Officer Coon's kicking may have been the result of an unconstitutional dog-bite policy does not change the jury's finding, and would not justify allowing additional damages for the dog bites.

Ruvalcaba cites *Chew* for the proposition that he can still recover damages from the City and Gates because he has not been compensated for his dog bite injuries. Like this case, *Chew* involved claims that an officer had used excessive force both by kicking the plaintiff and through his handling of the dog. *Chew,* 27 F.3d at 1436. *Chew* involved a general finding of excessive force, however, so it was not clear whether the award of damages was compensation for the injuries from the dog bites or the kicks. *Id.* at 1437–38. Here, it was clear from the jury's answers to the special interrogatories that the jury awarded damages to Ruvalcaba only for his kicking injuries because only the kicks constituted the excessive force. Ruvalcaba has already been fully compensated for his kicking injuries, and the "one-satisfaction rule ... preclude[s Ruvalcaba] from seeking a further monetary award from the remaining defendants for those injuries." *Id.* at 1438.

■ Even though Ruvalcaba has been fully compensated for his injuries, he may still recover nominal damages for a "separate and distinct [constitutional] wrong" irrespective of whether he is entitled to actual damages for that wrong. *Larez v. City of Los Angeles,* 946 F.2d 630, 640 (9th Cir.1991). Punitive damages are unavailable as a matter of law. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

On remand, however, with respect to Ruvalcaba's claim against Gates, in his individual capacity, Ruvalcaba would be free to seek both nominal and punitive damages. *Smith v. Wade,* 461 U.S. 30, 35–36, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). If Gates is entitled to qualified immunity, summary judgment in his favor would be appropriate. *See Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Chew,* 27 F.3d at 1446. We should note that the events in this case occurred in May 1989. In *Chew,* this court held that, as of September 1988, the law was not established sufficiently clearly to prohibit the use of dogs to search for and bite unarmed suspects. *Id.* at 1447.

In sum, we reverse the district court's order dismissing the claims against the City and Gates. We remand for determination whether the City, and Gates in his official and individual capacities, adopted and maintained a policy of training and using police dogs in an unreasonable manner. Because Ruvalcaba has already been fully compensated for his injuries, he may recover only nominal damages against the City and against Gates in his official capacity. Ruvalcaba is free on remand, however, to pursue both nominal and punitive damages against Gates in his individual capacity, in the event that Gates is not qualifiedly immune.

### C. *Dr. Sakamoto*

■ Ruvalcaba argues that the district court erred by granting Dr. Sakamoto's motion for judgment as a matter of law. In order to succeed on a section 1983 claim for

---

3. We treat the claim against Gates in his official capacity as one against the City. As the Supreme Court has stated, "[o]fficial-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (in-
ternal quotation marks omitted). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. 3099.

inadequate medical treatment, Ruvalcaba must demonstrate that Dr. Sakamoto showed "deliberate indifference to [Ruvalcaba's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Further, the deliberate indifference must be both "purposeful," *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir.1992), *overruled on other grounds, WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997), and "substantial" in nature. *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir.1986).

■ The evidence of Dr. Sakamoto's treatment of Ruvalcaba reveals facts from which a jury could find several omissions and errors. Dr. Sakamoto failed to take Ruvalcaba's medical history, which likely would have revealed that Ruvalcaba had suffered a chest injury. Dr. Sakamoto's failure to diagnose Ruvalcaba's broken ribs caused a thirty-six hour delay before Ruvalcaba was treated, resulting in Ruvalcaba suffering a significant amount of pain. Although such errors may support a finding that Dr. Sakamoto was negligent, the facts do not support an inference that Dr. Sakamoto acted purposely with deliberate indifference. *See McGuckin,* 974 F.2d at 1060. The district court therefore did not err in dismissing Ruvalcaba's claim against Dr. Sakamoto.

### D. *Equal Protection Claim*

■ Ruvalcaba contends that the district court erroneously excluded evidence necessary to support his race discrimination claim. The district court dismissed that claim after Ruvalcaba indicated that "we are not going forward with that count." Ruvalcaba reiterated that position during the discussion over jury instructions. Because Ruvalcaba dropped this claim, the district court did not abuse its discretion in excluding the evidence.

### III. CONCLUSION

We AFFIRM the district court's grant of Dr. Sakamoto's motion for judgment as a matter of law. We also AFFIRM the district court's exclusion of evidence relating to Ruvalcaba's equal protection claim. We find that it was error not to disclose the substance of the special interrogatories until af-

ter closing arguments, but find that this error was harmless. We conclude that the district court's ruling that Officer Coon's kicks were unrelated to the City's dog bite policy was erroneous, and the district court should not have dismissed Ruvalcaba's claims against Gates and the City. We thus REVERSE the order dismissing those claims and REMAND to the district court to reinstate them to allow Ruvalcaba to pursue nominal damages against the City and Gates in his official capacity, and both nominal and punitive damages against Gates in his individual capacity. We dismiss as moot Ruvalcaba's remaining claims alleging errors committed by the district court relating to Officer Coon's liability. The parties shall bear their own costs.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED.**